Our last case this morning is 23-7060 Avant v. Doke. Ms. Levine? Good morning, your honors, and may it please the court. My name is Allison Levine. I'm representing Ken Doke, the appellant in this matter. As you're aware, this is an employment case. It's arising from the termination of Mr. Avant by Commissioner Ken Doke. It's a First Amendment perceived speech retaliation claim. Commissioner Doke did seek qualified immunity when he filed his motion for summary judgment, and qualified immunity was denied by the district court. There are many issues with the district court's denial of qualified immunity, but the most crucial, the most pressing, is the district court's finding that it was clearly established law that Commissioner Doke was required to conduct an investigation into the speech in question or into the absence thereof before terminating Mr. Avant. And the district court made that finding even though it also found that Commissioner Doke terminated Mr. Avant pursuant to a facially neutral policy. The district court relied heavily on the Waters v. Churchill case for the proposition that Commissioner Doke was required to conduct an investigation. And I think the court, the district court, went beyond saying reasonable investigation to at one point saying an objectively formal investigation. There's several issues with this. The court relied on the Waters case for its modified Garcetti-Pickering analysis, for its modified qualified immunity analysis, and also for its application of the Heffernan defense. Two things. First is the clearly established prong. When we're looking at whether law is clearly established, we're asking whether the matter at issue has been decided, whether it's, you know, beyond a doubt that a government official in that situation would know that conduct is illegal. If that's in question, the law has not been clearly established. Waters was a plurality opinion. Just to ask, this is a threshold. I know you want to get into Waters, but as far as what the district court did with Waters, there's this whole layer of the Garcetti-Pickering factors or elements. Yes. Five elements. And you mentioned that, and there's also this Heffernan defense. Yes. And you mentioned that the district court alluded to Waters and investigation in conjunction with the Heffernan defense. Yes. Correct. Would you also agree that to the extent the court discussed Waters in connection with the five elements, wasn't that discussion in connection with element two? Yes. That is, whether the speech was on a matter of public concern. Yes, that is correct. And the court didn't discuss Waters on the other elements. It's just element two and the Heffernan defense. Yes, that's correct. Okay. But also on the second prong of qualified immunity. So the court, the district court came back. I understand. Yes. So we have the five elements on the first prong and we have the five elements on the second prong. On the second prong.  Yes, the public concern element. Okay. Yes, Your Honor. As I was saying, in terms of whether that reasonableness requirement was clearly established, Waters is a plurality opinion. As far as, I mean, you were earlier talking about the investigation requirement, which is under Waters. But with Beth versus Hines, it clearly establishes the reasonableness requirement, doesn't it? It does, but not in terms. That case is speaking in terms of qualified immunity in general. That's the modified qualified immunity test. So I think we're looking at two different aspects of what is reasonable here. Just in general with qualified immunity, we're asking whether the conduct of a government official was reasonable in light of law that was clearly established at the time. So we're looking at that regardless. I think the Garcetti-Hickering factors and Waters is addressing something else entirely. That's going to be intent of speech and the intent of an employer in making a decision. So I think the reasonableness test that Waters has talked about is similar. But I think the way that the district court has applied this is just in an entirely different realm. I don't think that that was the intent. I don't think that was a proper application. But I think before we even get to that, was reasonableness even clearly established? And I think that's outside of the balance of what we're talking about with Hines. So I think it's a more specific question in Waters. And as I was saying, the plurality opinion in Waters is what the district court relied on. And the reasonableness of belief test was not condoned by a majority of the court, no matter how you get there. The plurality opinion was drafted by O'Connor and joined by Rehnquist and Ginsburg and Souter. Mr. Hammonds hopefully will tell me if I'm wrong about this, but I thought in a supplemental brief in the first sentence in the first paragraph on page five, Mr. Hammonds actually agrees with you, that Waters itself doesn't clearly establish the investigation requirement. But then he says that post-Waters, there are seven federal circuits that have interpreted Waters to conclude that there is an investigation requirement. So what he's arguing, I think, at least in his supplemental brief on five and six, is that there is a clearly established requirement of an investigation to satisfy Macbeth v. Hines, based on the consensus of out-of-circuit authority. Do you agree or disagree with that? I think that those circuits have interpreted Waters to have that requirement. But the cases to which the appellees cited were not perceived speech cases, and they were certainly not cases where termination pursuant to a neutral policy or were bringing in the Heffernan defense. That wasn't applicable. So I think when we're talking about in terms of clearly established law, there's nothing for Commissioner Doak to look to in those cases from other circuits that say this applies in a case of perceived speech, and it applies when a neutral policy is at issue. So I think that's the distinction there. So when we have this plurality opinion that the district courts relied on, the majority of the justices did not agree with using the reasonableness test. We have two concurring opinions, but honestly, the majority of the court, five justices, say that the reasonableness test should not be used. And that was for two completely different reasons. You have the concurring opinion from Scalia with Kennedy and Thomas joining, saying that the reasonableness test goes too far, that it's expanding First Amendment rights, and that it's limiting employers in their ability to basically effectively manage their operations. And then you have the dissent, Stevens and Blockman, saying that it's too lenient and government officials should essentially have their dunks in a row and there should be no kind of out that the reasonableness test requires. So that's the majority. Souter attempts to argue that the plurality opinion, using the reasonableness test, is the rule of law from the case, but his logic in that is flawed and circular. I mean, Souter himself was a part of the plurality. Then he writes a concurring opinion that basically says ditto to the plurality and then adds one slight little addition, just the requirement that the employer, he proposes once they've conducted a reasonable investigation, that they need to prove that they had a reasonable belief based on the outcome of that investigation. But we can't get to a majority with Souter. He says that a majority of the court would, that it would satisfy the Marx test because a majority of the court would agree that an employer who passes the reasonableness test would have no liability for a First Amendment claim. And then a different majority would agree with the statement that an employer who fails the reasonableness test would be liable for a First Amendment violation. And logically, that should be two sides of the exact same coin. If A is true, then B is true. But it's not because the court is just that divided on that issue. So... I'm interested in shifting to another topic. So if you want to say anything more about Otter's... Oh, no, sir. Go right ahead. Okay. This is a question about the third element of the Garcetti Pickering test that balances the speakers and the government's interests. Yes. So why would Commissioner Doak have an interest in taking adverse action against Mr. Rabant for speech that didn't happen? Well, it was Commissioner Doak's belief that the speech did happen. It was brought to him by private citizens. Oh, no, I know he thought it did. But what is... Given that it didn't happen, what is his interest in firing Mr. Rabant? Well, of course, he made that decision believing that it did happen. If it didn't, in fact, happen, I think it's enough that citizens came to him and made a complaint about an employee's behavior. And this is where we run into the neutral, facially neutral policy. Because the county had a policy that stated employees needed to maintain harmonious relationships with the public and with each other. And what Commissioner Doak and what his deputy Burgess were hearing was complaints that Mr. Rabant was not complying with that policy. Slightly different question. How could Commissioner Doak show actual disruption from speech that never happened? I think the way that he would show... I think it's enough that he shows potential disruption. And when there's disruption between colleagues, again, one of the complaints Mr. Rabant was... Well, don't the cases say that after passage of a certain amount of time, he's supposed to show actual disruption? Yes, and that's in cases of actual speech. There's nothing on that subject in terms of perceived speech. And I think it's absolutely true that allegations of gossip can cause just as much problems as actual gossip. All right, let me move to yet one more related question. Correct me if I'm wrong, but as I understand your argument, the employee here, Mr. Rabant, has no interest in perceived speech because he didn't... Correct. But wouldn't that mean an employee could never prevail in a perceived speech case? Because if he has no interest, he's not even going to lose. Actually, I'm out of time. Go ahead and ask your question. I actually think this case is really unique in the fact that Mr. Rabant did not just say, I did not make these statements. He actually testified that he had no interest in making them. He used that term that he had no interest in making those statements. Okay, one last question because I know you're over time, but did Mr. Rabant argue and did the district court address whether the third factor, the third element was clearly established? Violation of clearly established law. I don't believe that they did, that it did. I believe the district court's opinion was quite deficient in the other areas of the Garcetti-Pickering analysis. The other four, we conceded the first factor, and I think the district court opinion thoroughly addressed the public concern factor, but the remaining three, I don't think there was any discussion on whether that was established or not. Thank you, counsel. Thank you. Are you ready? You may proceed, yes.  Thank you, Your Honor. Members of the court, my name is Mark. My name is Mark Hammons, and I represent the appellee, Gary Abant, in this case. I would point out that Mr. Abant certainly has an interest in not being punished for perceived speech, particularly when the perceived speech would, by its nature, be something on a public interest. In this particular case, the subject of the perceived speech was derived from Mr. Doak's affidavit that he filed in support of summary judgment, based on facts he hadn't disclosed previously in discovery. When we asked him what the reasons for the action were for the first time when he filed a motion for summary judgment, he said, well, I thought Gary Abant was telling people that I had illegally, and he used the term illegally, built a private fence on private property using county money, an accusation that virtually by definition is a matter of public interest. It's a claim of crime by a public official. One of the areas that almost inherently is a matter of public concern. So they interjected that argument. Now, Mr. Abant said, no, I didn't say those things, but that was the reason, and under Heffernan, that's what's controlling. That was the reason why they fired him. It wasn't simply a reason. They said it was the primary or predominant reason for that action. So going into the issues on the appeal, I would like to point out that I think there are two of the matters that are briefed that are not properly before the court. The question of amending the complaint is a procedural matter. It's not within the pendant jurisdiction of this court. Pendant jurisdiction means that the determination of one issue inherently resolves the other issue, and that clearly does not. As a matter of fact, the pleadings will be refined by the final pretrial order. That's, I think, a spurious issue no matter how it's viewed. The other thing, though, is the Heffernan defense, which is raised. That is an affirmative defense, which depends on elements different than those contained within qualified immunity. It's the existence of a neutral policy that is equally or uniformly applied, both matters which were contested in the summary judgment, and which meets constitutional standards, which is a more difficult but legal issue. But the point is that defense would not determine the qualified immunity defense, nor would qualified immunity determine the Heffernan defense. There is no pendant jurisdiction over that. We think the court was correct and should be affirmed, but frankly, that's not within the scope of this appeal. The scope of this appeal is whether or not there's a public interest, and Mr. Avant was fired for speaking out on matters of public concern. The court raised the issue of disruption. You can have disruption based on a misunderstanding about what was said, but there's no evidence of any disruption in this case. We asked Mr. Duke about that. We put it in our summary judgment motion. Mr. Duke said there was no disruption he was aware of, and he's the county commissioner. He's the one who's claiming disruption. Who would know if it occurred? His assistant, Mr. Burgess, who's one of the principal players in this, said he didn't know of any disruption from the perceived speech. The court was clearly correct that there was no evidence of any disruption. The matters, as a matter of fact, that the court mentioned as having been raised by them related to something that was not part of the perceived speech. It was complaints about insurance and pay wages that are not considered as part of the disruption inquiry because the disruption inquiry focuses solely on the content of the speech at issue, not whether there's disruption from something else. That might go into a different factor, but it doesn't go into the disruption factor. Honestly, in going through this, it appeared that what we're attempting to do is relitigate the underlying facts and say, accept Mr. Doak's version of what occurred and ignore what the court said and found. And they've raised the blatant contradiction basis for that, which, frankly, under Roosevelt v. Hennig's, shouldn't be raised. There's a duty of candor that exception only applies in the face of objective evidence, usually a video or an audio or photographs, something that irrefutably established the fact. Here, they're just saying, well, we've got different people saying different things, and that rises to the level of a blatant contradiction. It doesn't. There's no case law that says that. The central issue, the one that would be most significant, and it is a question of law, is the impact of the Waters case. Now, they don't want to accept Justice Souter's analysis of the reasonableness factor as being the holding of a majority of the court. He analyzed under Marx those factors and came to a conclusion which no circuit has rejected. Nobody has. Well, Judge White relied on an investigation requirement. That's different, Your Honor, and I agree that is a different matter. And then in your panel briefing, you had relied on Waters. Yes, Your Honor. We ordered a supplemental brief on an issue that nobody had addressed, and I think the order was pretty narrow. How can a plurality opinion constitute clearly established authority, which had been your argument to that point? They filed their brief, and then you filed your brief, and on page five, jigs up. It doesn't, which had been the whole argument to this point. And then, being the wonderful lawyer you are, you took the opportunity to brief something that nobody had asked you to brief. Even if Waters, even though Waters is not clearly established authority, for the first time, I never made this argument in Judge White. I never made this argument in the panel briefing. For the first time, I'm going to argue to you, court of appeals judges, that there are these seven out-of-circuit opinions that Judge White had no opportunity to address. She didn't have any opportunity to address, and we really didn't invite you to address that. I agree. I did take advantage of the opportunity to point out, though, that that is something that does appear to be clearly established now. But I would say, at the trial court level, we didn't focus on the investigation under Waters as being necessary to the determination of reasonableness. We do agree that the presence or absence of an investigation is a factor that the court can consider, and absent other evidence of reasonableness, which the Macbeth decision requires the defendant, the government official, to have in this case. They have to meet that prima facie burden. Well, an investigation is one way to do that. We did not argue that it was the only way to do it. Well, Judge, okay, and I'm not trying to argue with you or anything, but I just want to probe this. So Judge White says that there is an investigation requirement. There was no investigation by Commissioner Doak, and then they argue, well, there's no clearly established requirement for an investigation. You say, yeah, there is, under Waters, and then you repudiate that. No, I agree, Your Honor. We argued initially that the Waters plurality, which does commend an investigation as a method for doing it, was the basis for that. Judge White did rely on that and on Fifth Circuit opinion, which is one of the other six that had adopted that. What we had argued was that under Macbeth, you had to show the prima facie case, and they hadn't done that. He did not address the other portion of that. He simply said there is no investigation, but the fact of the matter is there was no other evidence. In their briefing, the appellants are suggesting that Macbeth doesn't apply, that you don't have a burden to establish a prima facie case of reasonableness, and that Waters doesn't require you to establish a prima facie case of reasonableness, and on that point, Waters is clear. Souter's analysis under Marx is correct. Reasonableness is required, and investigation under the plurality would not be required except for acceptance by the majority of the circuit courts. So I agree with all of that, but to an extent, it's beside the point, because it boils down to, did they meet their burden of a prima facie case of reasonableness in making the decision? And he said they did not. He focused on the investigation, but he focused on the investigation because they didn't give him any other evidence, which would be a basis to find the prima facie case of objective reasonableness. So we could say that Waters' plurality doesn't establish it, and the court can decide whether or not to look at the way the circuit authority admittedly raised light in this, but it wouldn't make a difference unless they, first of all, met the Macbeth standard of a prima facie point of reasonableness, and they just didn't do that. So, yeah, but even without the plurality holding, this court has recognized the significance of an adequate investigation and analogous situations involving the termination of employees as one of the test for pretext. If you don't ask somebody whether they did it and what they did, then it's hard to say that it's an undisputed fact that you made a reasonable decision on that subject. Well, it's a little bit of a stretch, isn't it, to find a clearly established requirement based on McDonnell Douglas under Title VII? I mean, you're borrowing doctrines from a completely distinct area. Well, not completely distinct because the analysis that's used in those cases is very similar, and it's just like, you know, the Stevens versus Ortiz case that we cited, which indicated that, yes, a plurality opinion can clearly establish the law. That actually is the habeas corpus decision, but it uses the same standard as is used in qualified immunity. So there is a lot of analogy that courts regularly apply. But, again, the point is that it was clearly established by Tenth Circuit law that when you were relying on a subjective component such as intent, you have the burden of establishing a primarily facing case of objective reasonableness, and they didn't do that. He focused on the investigation, but that doesn't change the fact that his finding was that they had not met their burden of showing it was objectively reasonable. Mr. Hammons, how can you overcome qualified immunity when you haven't shown that Element 3 of the Garcetti-Pickering test was clearly established as a matter of law? Are you talking the disruption factor? No, well, I'm talking about the balancing of interest factors. Yes, which is usually characterized as disruption, because if there's no adverse impact on the government, then there's nothing to balance on that. But I think that is clearly established. I think the analysis exists and has been well defined within the case law. Did the district court even address that issue? Yes, they did. On the clearly established prong of qualified immunity? I don't know that he said for the purpose of the clearly established prong. What the court said was that the evidence that they presented did not show evidence of disruption that would outweigh the value of the purported speech. And frankly, there just was no evidence of disruption. The government does have the burden of showing that it has an interest that outweighs the interest in the speech. In this case, we evaluate the speech as it was perceived. It's speech on a core issue, and that is criminality or corruption within the operation of the government. One of the central things where there's always been a great public interest, one, by the way, that often outweighs personal interests or personal motivations under Deutch v. Jordan, I believe is the case that talks about that. When the court analyzed that and said it didn't outweigh it, I think that is addressing the element that I may not have said for qualified immunity purposes. But I don't think the analysis is that different between perceived speech and actual speech because the issue is actual disruption. If there's nothing further, we would ask that the court affirm. Thank you, counsel. We appreciate both of your arguments. You're excused. The case is submitted.